UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARCH SPECIALTY INSURANCE COMPANY,

                                          Plaintiff

-v-

VARANDA GROUP, INC.

                                          Defendant.

18 Civ. 7971 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Arch Specialty Insurance Company ("Arch") brings this action against Varanda Group, Inc. ("Varanda"), for breach of contract, unjust enrichment, and account stated. Arch seeks to recover unpaid insurance premiums that Varanda allegedly owes under the terms of a commercial general liability insurance policy issued by Arch. Currently pending before the Court is Varanda's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[1] For the following reasons, the Court grants Varanda's motion to dismiss.

---

[1] In the introduction to its memorandum of law, Dkt. 13, Varanda states that it also moves to dismiss under Rule 12(b)(6) for failure to state a claim. However, Varanda does not elaborate on this argument. Because the Court finds dismissal is warranted for lack of personal jurisdiction, it does not address Varanda's alternative argument.

1

## I. Background

### A. Facts[2]

Arch is an insurance company incorporated in Missouri with its principal place of business in Jersey City, New Jersey. Compl. ¶ 2. Varanda is a Florida corporation with its principal place of business in Orlando, Florida. *Id.* ¶ 3. In August 2015, Arch issued a General Commercial Liability insurance policy (the "Policy") to Varanda covering the period from August 21, 2015 to August 21, 2016. *Id.* ¶ 1. Arch represents that the Policy was underwritten and issued by Arch out of its New York City administrative office. Civitano Decl. ¶ 6; *id.*, Ex. A ("Arch Policy") at 1 ("Administrative Address: One Liberty Plaza, 53rd Floor, New York, NY 100006).

Under the Policy, the initial premiums were based on information submitted by Varanda or (on Varanda's behalf) its insurance agent regarding Varanda's estimated exposure for the coverage period. *Id.* ¶ 9. Arch alleges that "[b]ecause the initial premiums are based on estimated information, the Policy is subject to audit based on the actual exposure during the effective dates of coverage. The audit can result in additional premiums due to the insurer from the insured or return of premiums due to the insured from the insurer." *Id.* ¶ 10.

---

[2] The Court's account of Arch's factual allegations is drawn from the Complaint, Dkt. 1 ("Compl."). On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider all pleadings and accompanying affidavits and declaration, while still "resolving all doubts in [plaintiff's] favor. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*, No. 94 Civ. 5620 (JFK), 1997 WL 401810, at *2 (S.D.N.Y. July 16, 1997). Accordingly, the Court has considered Varanda's memorandum of law in support of its motion to dismiss, Dkt. 13 ("Varanda Mem."); the affidavit of Carlos Gomez in support of Varanda's motion, Dkt. 11 ("Gomez Aff."), and attached exhibits; Arch's memorandum in opposition, Dkt. 17 ("Arch Mem."); the declaration of Nicholas Civitano, Dkt 16 ("Civitano Decl.") and attached exhibits; and the reply affidavit of Jack S. Dweck, Dkt. 18 ("Dweck Aff.").

Arch conducted an audit and concluded that Varanda owed an additional $256,795 in premium payments. *Id.* ¶ 11. Varanda, Arch alleges, refused to pay that amount. *Id.* ¶ 12. Arch therefore brought this suit alleging breach of contract, unjust enrichment, and account stated. It seeks a total of $270,084.14 in damages, taxes and fees, as well as interest, attorneys' fees, and related expenses.

### B. Procedural History

Arch filed the Complaint on August 31, 2018. Dkt. 1. On October 18, 2018, Varanda moved to dismiss, Dkt. 10, and filed a supporting memorandum of law, Dkt. 13. On December 5, 2018, Arch filed a memorandum in opposition. Dkt. 17. On December 10, Varanda filed a reply affidavit. Dkt. 18.

## II. Applicable Legal Standards

### A. Personal Jurisdiction

"[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

"Where, as here, a district court in adjudicating a motion pursuant to Federal Rule of Civil Procedure 12(b)(2) 'relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal

3

jurisdiction.'" *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "This showing may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *Id.* (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 722 F.3d at 85 (quoting *S. New Eng. Tel.*, 624 F.3d at 138); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993). Nevertheless, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

To make out a *prima facie* case of personal jurisdiction, whether based on general or specific personal jurisdiction, plaintiffs must establish both "a statutory basis" for jurisdiction and that exercise of such jurisdiction accords "with constitutional due process principles." *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14 Civ. 01568 (JPO), 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015) (quoting *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014)). General personal jurisdiction subjects a defendant to suits on all claims. *Id.*; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific personal jurisdiction subjects a defendant to suits on only those claims that arise from the defendant's conduct in the forum. *Cortlandt*, 2015 WL 5091170, at *2; *see also Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014).

### III. Discussion

Varanda argues that the Court lacks either general or specific personal jurisdiction over it. The Court considers each theory of personal jurisdiction in turn.

#### A. General Jurisdiction

General personal jurisdiction in New York courts is exercised pursuant to N.Y. C.P.L.R. § 301, which provides that jurisdiction is proper when "a company 'has engaged in such a continuous and systematic course of doing business [in New York] that a finding of its presence [in New York] is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal quotation marks omitted); *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000).

As for the constitutional requirements for general personal jurisdiction, courts may exercise general personal jurisdiction over foreign corporations only "when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business—the 'paradigm' cases." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016).

Arch does not claim to have pled facts establishing, under the standards, general personal jurisdiction over Varanda. The facts pled clearly do not so establish. Nothing in the Complaint suggests that Varanda is or was "at home" in New York. On the contrary, both parties agree that Varanda is not incorporated in New York and does not maintain its principal place of business there. Accordingly, the Court holds that it cannot properly exercise general personal jurisdiction over Varanda.

5

## B. Specific Jurisdiction

Arch argues, however, that specific personal jurisdiction over Varanda exists because Arch, its insurer, underwrote and issued the Policy from its New York office. In New York, specific jurisdiction is exercised pursuant to C.P.L.R. § 302. *See State Farm Fire & Cas. Co. v. Swizz Style, Inc.*, 246 F. Supp. 3d 880, 887 (2017). Four categories of conduct can justify the exercise of personal jurisdiction over a party. Three are clearly inapplicable: where there have been (1) tortious acts in New York, (2) tortious acts outside New York, or (3) ownership of property in New York. N.Y. C.P.L.R. § 302(2)–(4). The parties dispute whether the fourth—which subjects a party that "transacts any business within the state or contracts anywhere to supply goods or services in the state" to the court's jurisdiction, *id.* § 302(a)(1)—provides a basis for the exercise of jurisdiction here.

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Barrett v. Tema Development (1988), Inc.*, 251 Fed. App'x. 698, 700 (2d Cir. 2007) (internal citation omitted). "New York courts define transact[ing] business as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

Arch argues that the Court "has personal jurisdiction over Varanda because Varanda engaged in a business transaction in New York by entering in a contract with Arch in New York." Arch Mem. at 5. Arch represents that the Policy was underwritten in and ultimately issued from Arch's "administrative address" in New York City. It therefore concludes that by

6

"procuring the Arch policy—a policy . . . issued by Arch out of its New York Office"—Varanda "transacted business in New York and availed itself to jurisdiction in New York." Arch Mem. at 3. Other than Arch's having underwritten and issued Varanda's Policy from its New York office, however, there is no other connection between Varanda and New York.

It is possible for a single transaction to satisfy the requirements for specific personal jurisdiction under § 302(a)(1). *See Franklin v. X Gear 101, LLC*, 17 Civ. 6452 (GBD) (GWG), 2018 WL 3528731, at *6 (S.D.N.Y. July 23, 2018). However, the transaction must have been "purposeful." *See Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) ("Section 302 is a single-act statute requiring but one transaction—albeit a purposeful transaction—to confer jurisdiction in New York). Courts are primarily concerned with "[t]he quality of the defendants' New York contacts." *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007). And "where there is a showing that business was transacted, there must be a 'substantial nexus' between the business and the cause of action." *Pryor*, 425 F.3d at 166.

Applying § 302(a)(1), the Second Circuit has identified a non-exhaustive list of factors to determine when an out-of-state defendant transacts business within New York. They are:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [the defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). No one factor is dispositive, and the ultimate determination is based on the totality of the circumstances. *Id.*

None of these factors militate in Arch's favor.

First, Arch does not show that Varanda ever had an ongoing contractual relationship with a New York corporation. Where courts have found an ongoing contractual relationship with a New York corporation, those corporations have generally been headquartered in New York and regularly communicated with clients from their New York offices. *See Sunward Elecs.*, 362 F.3d at 23; *Miranga v. Vira*, 386 F. Supp. 2d 299 (S.D.N.Y. 2005). Here, by contrast, Arch's sole connection to New York is that its administrative office is in New York City. And there is no indication that Varanda ever communicated with or conducted business through that office, whether during contract negotiations with Varanda or after the Policy was executed.

Second, Arch has not shown, or even asserted, that contract negotiations or contract execution with Varanda took place in New York. "[C]ourts will sustain jurisdiction based solely on telephone calls and facsimile communication in cases where the communication clearly shows that the defendant intended to project itself into New York commerce." *Sergio v. Surge Res., Inc.*, No. 04 Civ. 8424 (RCC), 2006 WL 559460, at *4 (S.D.N.Y. Mar. 7, 2006). Here, there is no evidence of any communication between Varanda and Arch's New York office. Arch reiterates it underwrote and issued the Policy to Varanda from New York. But Arch's back-office work does not support the conclusion that Varanda purposefully sought to "project itself into New York commerce." *Id. See Nutmeg Ins. Co. v. Iowa Mut. Ins. Co.*, No. 03 Civ. 9370, 2005 WL 1529523, at *5 (issuance of an insurance policy from an insurer's New York office did not support finding of personal jurisdiction because "[i]t cannot be said that [an insured] was an active participant in [the insurer's] performance in underwriting and issuing the . . . Policy").

Third, the Policy's choice-of-law provision does not express a preference for New York courts. It provides only that, if Arch fails to pay any amount due under the Policy, Arch "will submit to the jurisdiction of any court of competent jurisdiction within the United States . . . ."

8

Arch Policy at 32. This clause provides only that *Arch* will submit to the jurisdiction of a court of competent jurisdiction in the event it is sued by Varanda, which is not the case here. The provision says nothing about the circumstances in which Arch initiates an action. And the choice-of-law provision says nothing about New York. This factor, too, does not support personal jurisdiction.

Finally, the Policy does not specify where Varanda was to send payments or put in place any pother ongoing course of dealings between Varanda and Arch's New York office. It does not, for example, oblige, Varanda to send payments to Arch's New York administrative office. It is equally possible that Varanda was required to remit payments to Arch's "home office" in Missouri—the only state in which Arch is licensed, Arch Policy at 2—or to another location entirely. The record is silent on the question. The Court will not speculate or "draw argumentative inferences" in Arch's favor, *In re Terrorist Attacks*, 714 F.3d at 673, on this point.

Construing the facts in the light most favorable to the plaintiff, Arch has failed by a wide margin to demonstrate that this court can properly exercise personal jurisdiction over Varanda. The fact that the Policy issued out of Arch's New York office—the sole connection between either party and New York—is insufficient to support personal jurisdiction here over Varanda.

Arch urges that, rather than dismiss under Rule 12(b)(2), the Court authorize it to take discovery on the issue of personal jurisdiction in New York. The Court declines to do so. Arch gives no reason to infer that such an inquiry would bear fruit. It was for Arch to investigate Varanda's contacts with New York before bringing this action. Arch, for example, was well-positioned to know whether any contract negotiations with it took place in New York, whether Varanda communicated with Arch's New York office, or whether Varanda sent payments to Arch's New York office. Discovery into the issue of jurisdiction would be both inefficient and

9

unnecessary. Arch is at liberty to file this lawsuit in a jurisdiction where a stronger showing of personal jurisdiction can be made, or, if its investigation reveals a more substantial basis for personal jurisdiction here, to file anew in New York.

## CONCLUSION

For the foregoing reasons, Varanda's motion to dismiss for lack of personal jurisdiction is granted, without prejudice. The Court respectfully directs the Clerk of Court to close the motion pending at docket entry 10 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: April 4, 2019
New York, New York